REQUESTED BY: Dear Senator Wesley:
This is in reply to your inquiry concerning possible liability for public statements by a state senator.
As you suggested, the United States Supreme Court inHutchinson v. Proxmire, recently had occasion to go into this subject.
The Supreme Court examined both the scope of the immunity of a U.S. Senator under the Speech and Debate Clause of the United States Constitution as well as the question of liability for defamation if the person claiming to have been injured was a `public figure.'
On the first question, the court reaffirmed that the Speech and Debate Clause protects congressmen not only for utterances made within the four walls of either chamber but also protects committee hearings and committee reports. Citing Doe v. McMillan, 412 U.S. 306 (1973) and Gravelv. United States, 408 U.S. 606 (1972). The court emphasized, however, that the protection extended only to `legislative activities.' Proxmire argued that such things as newsletters to constituents and press releases were part of his legislative activities as this brought pressure on other congressmen, governmental agencies and also exercised his `informing' obligation. The court rejected this argument pointing out that even republication of defamatory material first uttered within the four walls of Congress had been held to not be protected by the Speech and Debate Clause. Quoting from Doe v. McMillan, 412 U.S. 306, 314-315, the court stated:
 "A Member of Congress may not with impunity publish a libel from the speaker's stand in his home district, and clearly the Speech or Debate Clause would not protect such an act even though the libel was read from an official committee report. The reason is that republishing a libel under such circumstances is not an essential part of the legislative process and is not part of that deliberative process `by which Members participate in committee and House proceedings.'"
The court then held:
 "We reach a similar conclusion here. A speech by Proxmire in the Senate would be wholly immune and would be available to other Members of Congress and the public in the Congressional Record. But neither the newsletters nor the press release was `essential to the deliberations of the Senate' and neither was part of the deliberative process."
The court bolstered its opinion with the following fromUnited States v. Johnson, 383 U.S. 169 (1966). The court stated:
 "In stating that those things [Johnson's attempts to influence the Department of Justice] `in no wise related to the due functioning of the legislative process' were not covered by the privilege, the Court did not in any sense imply as a corollary that everything that `related' to the office of a Member was shielded by the Clause. Quite the contrary, in Johnson we held, citing Kilbourn v. Thompson, supra, that only acts generally done in the course of the process of enacting legislation were protected.
 "In no case has this Court ever treated the Clause as protecting all conduct relating to the legislative process.
 "In its narrowest scope, the Clause is a very large, albeit essential, grant of privilege. It has enabled reckless men to slander [by speech or debate] and even destroy others with impunity, but that was the conscious choice of the Framers."
 "We are unable to discern any `conscious choice' to grant immunity for defamatory statements scattered far and wide by mail, press, and the electronic media." Hutchinson v. Proxmire, supra.
As to the argument that the `information' function is a part of the legislative process the court clarified that it had used this term in previous cases to cover congressional efforts to inform itself through committee hearings and reports as a part of the legislative function and not the activity of members of Congress telling the public about their activities. `Valuable and desirable as it may be in broad terms, the transmittal of such information by individual Members in order to inform the public and other Members is not a part of the legislative function or the deliberations that make up the legislative process.'
In deciding the first amendment `free speech issue' the court held that the plaintiff had not become a `public figure' by accepting grants of public funds for research and by publishing reports as to his research or by answering Senator Proxmire's charges in the press. (The reason Proxmire wanted to establish that the plaintiff was a `public figure' was because the Supreme Court had held in New York Times v.Sullivan, 376 U.S. 254 (1964), that a `public figure' could not sustain any cause of action for defamation unless he could show that the defamation had been made with `actual malice.')
In Tenney v. Brandhove, 341 U.S. 367, the United States Supreme Court held that state legislators, `acting in a field where legislators traditionally have power to act' are immune from civil liability under the Civil Rights Act. We assume that the same definitions and reasoning used by the court as to congressmen in the various cases discussed, would be used as to state legislators in any defamation based lawsuit.
In the recent case of William E. Green, plaintiff v. John W. DeCamp, et al., defendants, in the United States District Court for the District of Nebraska, Chief Judge Urbom in dismissing plaintiff's petition held that committee activities of the Nebraska Legislature were a proper legislative function and that the state legislators were immune while so acting, reaffirming and applying as to state legislators,Tenney v. Brandhove, above, and previous U.S. Supreme Court cases as to congressmen mentioned earlier herein.
In light of the foregoing, it would be our opinion that a state legislator making defamatory statements, whether in the form of an award or otherwise, by the use of newsletters, press releases or other modes of transmitting information would be personally liable. A state legislator, in our opinion, would be protected so long as such statements were made upon the floor, in legislative committee or in legislative committee reports distributed in the normal course of legislative activities.